IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Troy David Cowart<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:19cv297 (LO/IDD) |
| | ) |
| Dr. Abdul Jamaludeen,<br>    Defendant. | )<br>) |

## MEMORANDUM OPINION & ORDER

Troy Cowart, a former inmate at Virginia Beach Correctional Center (VBCC), has brought pro se a civil-rights suit against Dr. Abdul Jamaludeen, a physician at VBCC, claiming that the doctor acted with deliberate indifference to his Type I diabetes. See 42 U.S.C. § 1983. Dr. Jamaludeen moves for summary judgment. [Dkt. No. 16]. Cowart has received the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 18], and opposes Dr. Jamaludeen's motion [Dkt. Nos. 24–28, 54]. Because the undisputed evidence demonstrates that Dr. Jamaludeen did not act with deliberate indifference to Cowart's serious medical need, the motion for summary judgment will be granted.

### I. Background

In an unverified complaint, Cowart alleges that Dr. Jamaludeen provided constitutionally deficient medical care in treating his Type I diabetes during his incarceration at VBCC (from May 31, 2016 through April 17, 2017). [Dkt. No. 1]. In particular, Cowart alleges that his blood-sugar levels were tested and insulin was administered with insufficient frequency. He alleges that he should have received insulin injections four times daily—per Dr. Jamaludeen's orders—but

they were not given "a minimum of 59 times."[1] [Id.]. When he alerted Dr. Jamaludeen to the issue, Cowart alleges, the doctor "simply shrugged his shoulders." [Id.]. Cowart further alleges that, because he did not receive the correct amount of insulin at all times, he suffered hemorrhaging in his retinas, eyesight deterioration, foot neuropathy, diabetic ketoacidosis, and kidney damage.

Dr. Jamaludeen moves for summary judgment, contesting that he acted with deliberate indifference to Cowart's serious medical need through an affidavit supported by medical records. [Dkt. Nos. 16–17]. According to Cowart's medical records, when he arrived at VBCC on May 31, 2016, he reported his history of diabetes during intake. [Def. Ex. B(2), at SA 181–82]. That day, Cowart's blood-sugar level was 588, a level Dr. Jamaludeen describes "extremely high." [Def. Ex. A, Jamaludeen Aff. ¶ 6; Def. Ex. B(2), at SA 93]. The same day, Dr. Jamaludeen placed orders for a "Insulin regular Injection" "per sliding scale"; "Insulin NPH" twice daily; blood-glucose checks twice daily; and a diabetic diet. [Jamaludeen Aff. ¶ 7; Def. Ex. B(2) at SA, 33, 35, 372, 374]. Dr. Jamaludeen examined Cowart two days later, on June 2, 2016, noted Cowart's reported history of diabetic retinopathy and neuropathy, and prescribed Neurontin[2] to

---

[1] The number of asserted missed insulin injections/glucose checks has evolved since Cowart first filed suit. (Sometimes the number refer to insulin only and sometimes the number refers to both insulin and blood-glucose checks, without differentiating). The complaint alleges that he missed at least 59 injections. [Dkt. No. 1]. In his first response opposing summary judgment, Cowart says he missed 68 "doses and or blood glucose checks" injections. [Dkt. No. 24-1]. And in his supplemental response, Cowart contends that he missed 70 insulin injections. [Dkt. No. 54, Pl. Suppl. Resp. Opposing Summ. J., at 9].

[2] Neurontin and gabapentin are used interchangeably in Cowart's medical records. Neurontin is a trade name for the generic drug, gabapentin. See https://www.webmd.com/drugs/2/drug-9845-8217/neurontin-oral/gabapentin-oral/details (last visited July 27, 2020).

2

treat the neuropathy. [Jamaludeen Aff. ¶ 8; Def. Ex. B(2), at SA 149–56]. The doctor also ordered a nightly blood-glucose check. [Def. Ex. B(2), at SA 374].[3]

Concerning the diabetic retinopathy, during an exam on March 17, 2017, Dr. Jamaludeen observed "small hemorrhages in [Cowart's] eyes," noted that Cowart "had no symptoms at that time," and referred him to an outside ophthalmologist. [Jamaludeen Aff. ¶ 10; Def. Ex. B(2), at SA 59, 556]. The ophthalmologist appointment could not be accommodated before Cowart departed VBCC on April 17, 2017. [Jamaludeen Aff. ¶ 12].

According to Dr. Jamaludeen, Cowart's diabetic condition "markedly improved" while at VBCC. [Jamaludeen Aff. ¶ 16]. His blood-sugar level upon intake was 588. [Id. ¶ 6]. Within two months of arriving at VBCC, Cowart's blood-sugar level never again rose above 500. [Id. ¶ 16]. And Cowart's blood-sugar levels measured above 400 only 44 times during his 321-day tenure at VBCC. [Id.]. Dr. Jamaludeen also ordered two AIC tests to assess Cowart's blood-sugar levels, one on June 8, 2016, soon after Cowart's arrival at VBCC, and another eight months later, on February 11, 2017. [Id. ¶ 17; Def. Ex. B(2), at SA 187, 193]. The first test showed a value of 10.3%, "Above High Normal." [Def. Ex. B(2), at 193]. The second test's results, though still labeled "Above High Normal," had decreased to 7.8%. [Id. at 187.]. Dr. Jamaludeen avers that the AIC's change in value "shows a significant improvement in [Cowart's] blood sugar control." [Jamaludeen Aff. ¶ 17].

Cowart attempts to rebut this evidence in his filings opposing summary judgment through unsubstantiated allegations and annotated copies of his medical records that document his receipt of insulin. But Cowart did not swear under penalty of perjury that his assertions are true,

---

[3] There is an August 28, 2016 stop date for the May 31, 2016 previous order for twice daily glucose checks. [Def. Ex. B(2), at SA 374]. It is unclear whether the June 1, 2016 order was intended to replace the May 31 order or to run concurrent to it.

3

rendering them inadmissible at summary judgment. See Fed. R. Civ. P. 56(e); United States ex rel. Doe v. Heart Solution, PC, 923 F.3d 308, 315–16 (3d Cir. 2019); Turner v. Human Genome Sciences, Inc., 292 F. Supp. 2d 738, 743 (D. Md. 2003). For context, however, the Court will recount Cowart's principal assertions.

Cowart says that, at VBCC, insulin administration and blood-glucose checks are conducted daily at 3 am, 10 am, 3 pm, and 9 pm. [Dkt. No. 54, Pl. Suppl. Resp. Opposing Summ. J., at 10]. Yet, Cowart adds, he missed doses 70 times "for lack of medical personnel" at VBCC. [Id. at 9]. In a self-annotated version of his VBCC medical record, Cowart has noted occasions on which he supposedly did not receive an insulin injection and/or blood-glucose check. [Dkt. No. 24-2, Index of Ex.; Pl. Ex. 2-1-2-87].

## II. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. Analysis

Dr. Jamaludeen argues that the undisputed evidence negates Cowart's claim that the doctor acted with deliberate indifference to his Type I diabetes. Pointing to Cowart's medical records, Dr. Jamaludeen contends that there is no evidence showing that Cowart's diabetic condition deteriorated from missed glucose checks and insulin injections.

To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and (2) the defendant "knows of an disregards the risk posed by the serious medical needs of the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks and citations omitted). The first element is an objective inquiry and the second is subjective. Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017). It is undisputed that Cowart has insulin-dependent diabetes. [Dkt. No. 17, Undisputed Material Facts, ¶¶ 4–8]. Because "diabetes is a 'common yet serious illness that can produce harmful consequences if left untreated for even a short period of time,'" the objective component of the deliberate-indifference standard is satisfied, and the Court's inquiry will focus on the subjective component. See Scinto v. Stansberry, 841 F.3d 219, 230 (4th Cir. 2016) (quoting Lolli v. Cnty. of Orange, 351 F.3d 410, 419 (9th Cir. 2003)).

Dr. Jamaludeen is correct that there is no evidence to support Cowart's assertion that the doctor knew of and disregarded Cowart's need for diabetes treatment. The Court reiterates that Cowart's conclusory allegations that he was not receiving the amount of glucose checks and insulin injections prescribed are not *evidence* and cannot be invoked to create a genuine dispute of material fact when compared to Dr. Jamaludeen's affidavit and the medical records created and maintained in the ordinary course of business at VBCC. [Jamaludeen Aff. ¶ 3].

Rather, Cowart's medical records do not show a standing order for insulin injections four times daily. When Cowart arrived at VBCC on May 31, 2016, Dr. Jamaludeen ordered "Insulin Regular Injection" "per sliding scale" and "Insulin NPH (Human) (Isophane) Subcutaneous" twice daily. [Def. Ex. B(2), at SA 35]. After Cowart's appointment with Dr. Jamaludeen on June

5

2, 2016, the doctor changed Cowart's insulin medication to "Lantus Subcutaneous," another kind of insulin,[4] for administration "twice per day for diabetics." [Id.]. (There is another June 2, 2016 entry for this order, to last until June 5, 2016. [Id.]. It is unclear whether this is a duplicate entry or meant to order an additional two injections for those three days.) Dr. Jamaludeen changed the twice daily injection dosage on June 7, 2016. [Id.]. On July 14, 2016, Dr. Jamaludeen changed the type of insulin to "HumuLIN N Subcutanous" and ordered one morning and one evening injection. [Id. at SA 34]. On July 20, 2016, Dr. Jamaludeen changed the dosages of the twice daily HumuLIN N injections and, *for that day only*, added an additional morning and evening injection. [Id.]. Dr. Jamaludeen again changed the dosage for the HumuLIN N daily injections on September 8, 2016, and again, for that day only, added another two injections. [Id.]. That September 8 standing order for twice daily HumuLIN N remained in place until Cowart left VBCC. [Id.]. Thus, with the exception of at most five days, there is no evidence that Cowart should have received four insulin treatments a day. As for whether Cowart was receiving the number of glucose checks and insulin injections *actually prescribed*, Cowart has not supplied any evidence showing that any were withheld or that Dr. Jamaludeen was put on notice about supposed withheld treatment. Cowart's unverified, hand-annotated medical chart is not evidence. Thus, Cowart has not demonstrated that Dr. Jamaludeen knew that Cowart was not receiving the treatment prescribed for his Type I diabetes but disregarded that knowledge and the risk to Cowart's health.

Cowart additionally argues that the record evidence shows that his diabetes remained poorly controlled by Dr. Jamaludeen, who, in Cowart's view, failed to manage his diabetes "up to prevailing professional standards," thus demonstrating deliberate indifference. [Pl. Suppl.

---

[4] See https://www.accessdata.fda.gov/drugsatfda_docs/label/2007/021081s024lbl.pdf (rev. Mar. 2007)

Resp. Opposing Summ. J., at 16–22]. But a "deviation from the accepted standard of care, standing alone . . . is insufficient to clear the high bar of a constitutional claim." Jackson v. Lightsey, 775 F.3d 170, 179 (4th Cir. 2014) (internal quotation marks and citation omitted). Thus, even if the record shows that Cowart's blood-glucose levels remained above normal while at VBCC, that does not establish that Dr. Jamaludeen acted with deliberate indifference. Indeed, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Williams v. Ferdarko, 807 F. App'x 177, 180 (3d Cir. 2020) (internal citation and brackets omitted)). And, moreover, "[u]nsuccessful medical treatment . . . do[es] not constitute deliberate indifference." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Here, though the efficacy of Cowart's treatment arguably could be contested, there is no evidence of deliberate indifference. The evidence shows that Dr. Jamaludeen noted Cowart's diabetes, prescribed treatment, and monitored and adjusted that treatment throughout Cowart's incarceration at VBCC. That is sufficient.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment [Dkt. No. 16] be and is GRANTED; and it is further

ORDERED that this civil action be and is DISMISSED.

To appeal this decision, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. See Fed. R. App. P. 4(a). A written notice of appeal is a short statement indicating a desire to appeal and including the date of the Order the plaintiff wishes to appeal. Failure to file a timely notice of appeal waives the right to appeal.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of defendant, to send a copy of this Order to plaintiff and to counsel of record for defendant, and to close this civil action.

Entered this \_\_10\_\_ day of \_\_August\_\_ 2020.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge